**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ERIE INSURANCE EXCHANGE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | Civil Action No. |
| | : | 1:06CV00573 -- DAR |
| **HAL WALLS et al.,** | : | |
| | : | |
| **Defendants.** | : | |

# DEFENDANT DONALD K. HINKLE'S
# MOTION FOR PARTIAL SUMMARY JUDGMENT

In this declaratory-judgment action, Defendant Donald Hinkle, by and through his attorneys, Koonz, McKenney, Johnson, DePaolis & Lightfoot, L.L.P., respectfully moves this Court under Federal Rule of Civil Procedure 56(b) and Local Civil Rule 7(h) for partial summary judgment. The question before the Court on the motion is straightforward – whether Mr. Hinkle was an employee under the terms of the insurance policy issued by Plaintiff Erie Insurance Exchange to Defendants Barbranda and Hal Walls, when Mr. Hinkle was seriously injured on August 29, 2005 in a fall from a ladder at rental property owned by Mrs. Walls in Washington, DC. Mr. Hinkle suffered serious and permanent injuries, including head trauma, a fractured eye socket, and a broken wrist and foot.

If, as Mr. Hinkle contends and the undisputed material facts show, Mr. Hinkle was *not* an employee, then the policy's "employee" exclusion does not apply and Plaintiff is obligated under the Walls' policy to provide coverage for the injuries that Mr. Hinkle suffered in the accident.

The grounds for the motion are set forth in the Mr. Hinkle's attached Statement of Material Facts as to Which There is No Genuine Issue and his Memorandum of Points and Authorities in Support.

Respectfully submitted,

KOONZ, MCKENNEY, JOHNSON,
 DEPAOLIS & LIGHTFOOT, L.L.P.


By:  /s/ Roger C. Johnson
  Roger C. Johnson (D.C. Bar #940577)
  Andrew W. Cohen (D.C. Bar #441149)
  2001 Pennsylvania Avenue, N.W.
  Suite 450
  Washington, DC  20006
  Tel:  (202) 659-5500
  Attorneys for Defendant Donald K. Hinkle

Date:  March 7, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ERIE INSURANCE EXCHANGE,         :
                                     :
         **Plaintiff,**            :
                                     :
  **v.**                            :       Civil Action No.
                                     :       1:06CV00573 -- DAR
HAL WALLS et al.,                 :
                                     :
         **Defendants.**         :

### Defendant Donald K. Hinkle's Statement of Material Facts as to Which There is No Genuine Issue

1.     Donald K. Hinkle attended high school until tenth grade, and thereafter attended vocational school, where he earned a certificate.  (Deposition of Donald K. Hinkle, 8:19 to 9:21, Feb. 6, 2007.)[1]  Over the years, Mr. Hinkle worked in various trades – doing electrical and carpentry work with his brother (*id*. 10:8-12; 16:3-9); working for his uncle in the transmission business (*id*. 15:16-19); and managing the tire and automotive departments at a Sears store for thirteen years.  (*Id*. 15:4-10.)  His last job was in 1985, working as a plumber under the main engineer at the Hunting Towers apartments in Old Town.  (*Id*. 13:18 to 14:12; 14:19 to 15:3.)  Owing to health issues, including hypertension, Mr. Hinkle has considered himself disabled since approximately 1985.  (*Id*. 16:10-20; 21:9-14.)

2.     Mr. Hinkle met co-Defendant Hal Walls in or about 1999, when Mr. Walls moved into Mr. Hinkle's neighborhood, just two doors away.  (Hinkle Dep. 18:21 to 19:7; *see* Deposition of Hal Walls, 54:1-3, Jan. 10, 2007.)[2]  Mr. Walls is an attorney who stopped

---

[1] Cited excerpts from Mr. Hinkle's Deposition are attached hereto as Exhibit 1.

[2] Cited excerpts from Mr. Walls' Deposition are attached hereto as Exhibit 2.

practicing law in 1995 and has not worked since then, except for "just on-and-off jobs" that he describes as "[i]nvestment, entrepreneurial ventures." (Walls Dep. 9:10-17.) His wife, co-Defendant Barbranda Walls, is employed as a freelance writer and editor. (*Id*. 9:18 to 10:8.)

3.      Mrs. Walls owns several rental properties in the Baltimore/Washington area. (*Id*. 36:9 to 37:10.) Mr. Walls is principally responsible for the maintenance and repair of the properties. (*Id*. 38:7-16.) Mr. Walls would do some of the maintenance and repairs on the rental properties himself, depending on the amount of time a job would take, the degree of physical activity, and the skill level involved. (*Id*. 40:1-10.)

4.      At some point, Mr. Hinkle began to do occasional work for Mr. Walls. Mr. Walls "was under the impression that [Mr. Hinkle] was doing contract work, jobs here and there." (*Id*. 54:9-11.) Mr. Walls felt that Mr. Hinkle had "significantly more expertise" than he did in several areas of work, including electrical and plumbing. (*Id*. 115:14-22; 117:4-12.)

5.      Mr. Hinkle did not work regularly for Mr. Walls, owing in part to Mr. Hinkle's health issues. According to Mr. Hinkle, Mr. Walls "would either ask me for advice, or he would ask me if I could something for him; and I would let him know if I could or couldn't. Sometimes I could, and sometimes I couldn't, it would depend on my health issue." (Hinkle Dep. 20:14-19.)

6.      Mr. Hinkle performed work sporadically for Mr. Walls from 2000 to 2005; "sometimes he worked a while, and, then, he would take off, and [Mr. Walls] didn't see him for a while, so it was on and off." (Walls Dep. 60:5-10.) Mr. Walls estimated that on occasion, Mr. Hinkle worked for him for an entire month at a time. (*Id*. 62:11-16.)

7.    Mr. Hinkle did not perform work exclusively for Mr. Walls.  Since 1985, he has done "a little bit" of work for friends and neighbors.  (Hinkle Dep. 17:3-8.)

8.    Mr. Walls did not keep any records of Mr. Hinkle's work for him.  (*See* Walls Dep. 61:18-22.)  At best, Mr. Walls thought he might be able to piece together Mr. Hinkle's work history if Mr. Walls "could find any receipts, checks, anything, stuff that [he] bought, the jobs we did, or what have you."  (*Id*. 62:1-6.)

9.    When Mr. Hinkle performed work for Mr. Walls, Mr. Walls typically paid Mr. Hinkle in cash.  (Hinkle Dep. 22:1-5; Walls Dep. 15:16-22.)  Mr. Walls typically paid Mr. Hinkle $120 per day for his work, based on a $15.00 per-hour wage, (Walls Dep. 56:5-7; Hinkle Dep. 31:2-5), but Mr Hinkle was typically paid for a full day's work irrespective of the number of hours he actually worked.  (Hinkle Dep. 31:6-14; Walls Dep. 56:5 to 57:7.)

10.    Mr. Hinkle never had any written contracts for work with Mr. Walls.  (Hinkle Dep. 22:1-5; Walls Dep. 14:11-18.)

11.    Mr. Walls never deducted anything from his payments to Mr. Walls.  (Walls Dep. 118:11-21.)

12.    Mr. Walls never issued Mr. Hinkle an IRS Form 1099.  (Hinkle Dep. 22:6-8; Walls Dep. 16:12-17.)

13.    Mr. Hinkle never filled out any W-2 forms for Mr. Walls.  (Hinkle Dep. 22:14-16; Walls Dep. 16:12-17.)

14.    Mr. Walls never withheld taxes for Mr. Hinkle.  (Walls Dep. 46:3-5.)

15.    Mr. Walls never paid Social Security taxes for Mr. Hinkle.  (*Id*. 115:3-5.)

16.    Mr. Walls could fire Mr. Hinkle for any reason.  (*Id*. 87:15-17.)

17.    Mr. Walls never provided Mr. Hinkle with any benefits. (*Id*. 57:8-10.)

18.    Mr. Walls never carried any worker's compensation insurance for Mr. Hinkle. (*Id*. 118:5-7.)

19.    Mr. Walls never provided Mr. Hinkle with any training; rather it was "[p]robably just the opposite. [Mr. Hinkle] provided [Mr. Walls] with the training." (*Id*. 65:5-9.)

20.    Mr. Walls "had some knowledge of the work" that Mr. Hinkle and co-Defendant Vincent Edwards did. (*Id*. 72:6-9.) Mainly Mr. Walls would "tell them what [he] wanted done, but as to the methodology in which they proceeded, it was pretty much up to them." (*Id*.)

21.    Mr. Hinkle was free to decide how many hours a day, or which hours of the day, he performed work for Mr. Walls. (*Id*. 77:10-16.)

22.    Mr. Walls and Mr. Hinkle had an agreement that Mr. Hinkle was an independent contractor, not an employee. (Hinkle Dep. 22:17 to 23:9; 23:21 to 24:1.)[3] Mr. Walls explained that:

> [F]rom the beginning, we operated on the principle . . . that I didn't control him. . . . He worked when he worked. He couldn't work at all times, and I didn't have work for him at all times, so he wasn't an employee, and he would take care of his taxes, and I would take care of my taxes.

(Walls Dep. 26:13-19.)

23.    On or about August 29, 2005, Mr. Walls was going to a rental property in the District of Columbia to have a skylight installed by Mr. Edwards. (Walls Dep. 88:6-18;

---

[3] There is a conflict in the testimony of Mr. Hinkle and Mr. Walls as to whether the agreement was oral or written, (*compare* Hinkle Dep. 22:17 to 23:20 *with* Walls Dep. 24:14 to 25:3.) But there is no dispute that, prior to the accident, Mr. Walls and Mr. Hinkle agreed that Mr. Hinkle was to be considered an independent contractor.

92:13-19.)[4]

24.    When Mr. Walls came outside to go to his car, he saw Mr. Hinkle, who was not

working for him that day; it was Mr. Hinkle's birthday.  (Hinkle Dep. 53:14-15; 55:8-13;

Walls Dep. 88:14.)

25.    Mr. Walls asked Mr. Hinkle if he could ride with him and give him some advice

with respect to the proper installation of a skylight, including measuring for the opening

because Mr. Walls did not trust Mr. Edwards to do it properly.  (Walls Dep. 88:14-18;

92:13-19; Hinkle Dep. 54:2-10; 57:18-22.)

26.    Mr. Hinkle did not expect to get paid for helping out Mr. Walls that day, and he

was not paid.  (Walls Dep. 98:16; Hinkle Dep. 55:5-7.)

27.    Neither Mr. Walls nor Mr. Hinkle considered Mr. Hinkle to be working for Mr.

Walls on the day of the accident.  Mr. Walls explained that "with respect to the incident

on August 29, he really wasn't working.  He just came there as a friend to take a look at

the job and advised me.  I wasn't paying him to do anything."  (Walls Dep. 24:8-13;

119:9-13; Hinkle Dep. 55:11-13 ("No, I didn't expect to be paid for it.  I thought it was

just another advice day.  I told him I wouldn't work that day, it was my birthday."))

28.    Mr. Hinkle was seriously injured when he fell from a 14 or 15-foot ladder he was

using to access the roof in which the skylight was to be installed.  The ladder moved

while Mr. Walls was holding it, and Mr. Hinkle fell from it.  (Walls Dep. 93:17 to 94:7;

95:17 to 96:8; 119:14-18; Hinkle Dep. 56:11-19.)

---

[4] According to Mr. Hinkle, Mr. Edwards was an unskilled laborer and a drug addict,
whom Mr. Hinkle believes may recently have been killed, based on a news report he
heard.  (Hinkle Dep. 26:10-13; 27:13-16.)

29.    Mr. Hinkle has asserted a claim under an insurance policy issued by Plaintiff Erie

Insurance Exchange to Mrs. Walls arising out of the injuries he suffered as a result of the

fall.  (Compl. ¶¶ 12-13.)

30.    The insurance policy provides coverage for Personal Injury Liability, as follows:

> **We** will pay for damages because of **personal injury** or **property
> damage** for which the law holds anyone we protect responsible and which
> are covered by your policy.  **We** cover only **personal injury** and **property
> damage** which occurs during the policy period.  The **personal injury** or
> **property damage** must be caused by an **occurrence** which takes place in
> the covered territory.

(Compl., Ex. A at 13) (emphasis in original.)

31.    The insurance policy specifically excludes coverage for "employees" of the

insured in the circumstances of the accident here:

> **We** do not cover under Personal Injury Liability (Coverage D) and
> Property Damage Liability (Coverage E) . . . bodily injury to employees of
> **anyone we protect** arising out of their employment by **anyone we protect**
> for which anyone we protect may be held liable as an employer or in any
> other capacity.

(*Id*., Ex. A at 14-15) (emphasis in original.)

32.    Plaintiff has alleged that "[b]ecause Mr. Hinkle was an employee of Barbranda

and Hal Walls, there is no coverage for his alleged bodily injuries under the Policy."

(*Id*. ¶ 25 (citing Compl. ¶14; Ex. A at 14-15).)

33.    Plaintiff seeks a declaration that Mr. Hinkle "was, at all times relevant to [the]

Complaint, an employee of Barbranda and Hal Walls."  (Compl. ¶ 27.C.)

34.    Plaintiff seeks a declaration "that because of Donald Hinkle's status as an

employee of Barbranda and Hall Walls, there is no coverage under the Policy for any

personal or bodily injuries suffered by him, and therefore Erie does not have any duty to

defend or indemnify its insureds in any lawsuit filed against any or all of them by Mr.

Hinkle, or anyone claiming for, through, or derivatively from him."  (Compl. ¶ 27.D.)

Respectfully submitted,

Koonz, McKenney, Johnson,
DePaolis & Lightfoot, L.L.P.


By:   /s/ Roger C. Johnson
   Roger C. Johnson (D.C. Bar #940577)
   Andrew W. Cohen (D.C. Bar #441149)
   2001 Pennsylvania Avenue, N.W.
   Suite 450
   Washington, DC  20006
   Tel:  (202) 659-5500
   Attorneys for Defendant Donald K. Hinkle

Date:  March 7, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ERIE INSURANCE EXCHANGE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | Civil Action No. |
| | : | 1:06CV00573 -- DAR |
| **HAL WALLS et al.,** | : | |
| | : | |
| **Defendants.** | : | |

# DEFENDANT DONALD K. HINKLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

Roger C. Johnson (D.C. Bar #940577)
Andrew W. Cohen (D.C. Bar #441149)
KOONZ, MCKENNEY, JOHNSON,
 DEPAOLIS & LIGHTFOOT, L.L.P.
2001 Pennsylvania Avenue, N.W.
Suite 450
Washington, DC  20006
Tel:  (202) 659-5500
Attorneys for Defendant Donald K. Hinkle

Date:  March 7, 2007

## TABLE OF CONTENTS

Introduction ............................................................................................................1

Summary-Judgment Standard....................................................................................1

Argument ................................................................................................................2

1.    Mr. Hinkle was not an employee of Mr. and Mrs. Walls. ....................................4

       A.     The five *Safeway* factors are not even implicated here
              because there is no genuine issue as to any material fact
              that Mr. Hinkle was not working for Mr. Walls on the day
              of the accident. ..............................................................................4

       B.     If the *Safeway* factors are implicated here, their application
              to the undisputed material facts compels the conclusion that
              Mr. Hinkle was not an employee of Mr. and Mrs. Walls,
              but merely an independent contractor...........................................5

              (1)    Control .....................................................................5

              (2)    Selection and engagement of Mr. Hinkle .......................7

              (3)    Payment of wages ......................................................8

              (4)    Power to discharge.....................................................8

              (5)    Whether the work is part of the regular business of
                     the employer...............................................................9

Conclusion ...............................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Ames v. Yellow Cab of D.C., Inc.*, Civil Action No. 00-3116 (RWR) (DAR),

    2006 WL 2711546 (Sept. 21, 2006).............................................................2, 6, 8-9

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)....................................................1, 2

*Beegle v. Restaurant Mgmt., Inc.*, 679 A.2d 480 (D.C. 1996)....................................1, 3, 4

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................................2

*District of Columbia v. Hampton*, 666 A.2d 30 (D.C. 1995)) .........................................2, 4

*Gardner v. Kothe*, 109 N.W.2d 405 (Neb. 1961) ...............................................................7

*Giles v. Shell Oil Corp.*, 487 A.2d 610 (D.C. 1985)...........................................................3

*Larson v. Johnson*, 184 F. Supp. 2d 26 (D.Me. 2002)........................................................6

*LeGrand v. Ins. Co. of N. Amer.*, 241 A.2d 734 (D.C. 1968) .............................................3

*Levy v. Currier,* 587 A.2d 205 (D.C. 1991)........................................................................3

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) .................2

*Moorehead v. District of Columbia*, 747 A.2d 138 (D.C. 2000) .........................................1

*Safeway Stores, Inc. v. Kelly,* 448 A.2d 856(D.C. 1982).......................................2, 3,4, 8

*Schecter v. Merchants Home, Delivery, Inc.*, 892 A.2d 415 (D.C. 2006) ......................7, 8


**Other Authorities**

Fed. R. Civ. P. 56(c) ...........................................................................................................1

Fed. R. Civ. P. 56(e) ...........................................................................................................2

53 Am. Jur. 2d *Master and Servant* § 2 (1970)..............................................................3-4

Restatement (Second) of Agency § 220(2) (1958)........................................................3

ii

## INTRODUCTION

The question before the Court on Donald K. Hinkle's motion for partial summary judgment is straightforward:  Was Mr. Hinkle an employee of the insureds, Barbranda and Hal Walls, on August 29, 2005 when he fell from a ladder at rental property owned by Mrs. Walls?  If Mr. Hinkle was not an employee, then the policy exclusion at the heart of this declaratory-judgment action does not apply and there is coverage under the policy for any personal or bodily injuries suffered by Mr. Hinkle

The undisputed material facts adduced in discovery establish conclusively that Mr. Hinkle was *not* an employee of Mr. and Mrs. Walls.  On the day in question, Mr. Hinkle was nothing more than a neighbor offering a neighbor some advice on a renovation project – a task for which he did not expect to be, and was not paid.  At most, Mr. Hinkle was an independent contractor, not an employee of, Mr. and Mrs. Walls.

## SUMMARY-JUDGMENT STANDARD

Summary judgment may properly be granted on the question of "the existence or non-existence of a master-servant relationship."  *Moorehead v. District of Columbia*, 747 A.2d 138, 143 n.7 (D.C. 2000) (citing, *inter alia*, *Beegle v. Restaurant Mgmt., Inc.*, 679 A.2d 480, 483 (D.C. 1996) (granting summary judgment).)  Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted in favor of a moving party if the record shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Material facts are those that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the Court must view all the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The non-moving party's opposition must consist of more than unsupported allegations; it must be supported by affidavits or other competent evidence setting forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). However, "[t]he mere existence of a scintilla of evidence" in support of the non-movant's position will not be sufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "The party asserting the employer-employee relationship has the burden of proving it." *Ames v. Yellow Cab of D.C., Inc.*, Civil Action No. 00-3116 (RWR) (DAR), 2006 WL 2711546, at *4 (Sept. 21, 2006) (citing *District of Columbia v. Hampton*, 666 A.2d 30, 38 (D.C. 1995)).

## ARGUMENT

Determining whether one who performs work on behalf of another is an employee or an independent contractor depends on the particular facts of each case. *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860 (D.C. 1982). In determining whether there is an employee or independent-contractor relationship, the Court considers the following factors: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer." *Id*. (citations omitted); *accord*

*Beegle*, 679 A.2d at 485; *LeGrand v. Ins. Co. of N. Amer.*, 241 A.2d 734, 735 (D.C.

1968).[5]

Although no single factor is controlling, "the decisive test . . . is whether the

employer has *the right to control and direct the servant in the performance of his work*

*and the manner in which the work is to be done*." *Safeway*, 448 A.2d at 860 (citations

omitted; emphasis added); *see, e.g.*, *Levy v. Currier,* 587 A.2d 205, 209 n.10 (D.C. 1991)

("The right to control the [alleged agent], not only as to the final result but in the

performance of the task itself, is the most important factor in determining whether

someone is a servant or an independent contractor."); *Giles v. Shell Oil Corp.*, 487 A.2d

610, 611 (D.C. 1985) ("The determination of the existence of the relationship basically

turns upon one of these factors:  control.") (citing 53 AM. JUR. 2D *Master and Servant* § 2

---

[5] In similar fashion, the RESTATEMENT (SECOND) OF AGENCY lists ten factors helpful in differentiating between an employee and an independent contractor:

(a)    the extent of control which, by the agreement, the master may exercise over the details of the work;

(b)    whether or not the one employed is engaged in a distinct occupation or business;

(c)    the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d)    the skill required in the particular occupation;

(e)    whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f)    the length of time for which the person is employed;

(g)    the method of payment, whether by the time or by the job;

(h)    whether or not the work is a part of the regular business of the employer;

(i)    whether or not the parties believe they are creating the relation of master and servant; and

(j)    whether the principal is or is not in business.

RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958).

(1970); *Safeway*, 448 A.2d at 860). "In this context, the right to control means 'the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision.'" *Beegle*, 679 A.2d at 485 (quoting *Safeway*, 448 A.2d at 860). The "right to control" is analyzed by looking to "the actual relationship between the parties and the language of any agreement between them." *Id*. (citing *Hampton*, 666 A.2d at 38).

## 1.    Mr. Hinkle was not an employee of Mr. and Mrs. Walls.

### A.    The five *Safeway* factors are not even implicated here because there is no genuine issue as to any material fact that Mr. Hinkle was not working for Mr. Walls on the day of the accident.

As an initial matter, the Court need not even delve into the *Safeway* factors if it concludes, as it should from the undisputed material facts, that Mr. Walls was neither an employee nor an independent contractor on the day of the incident. On that day, he was simply a neighbor doing a favor for a neighbor – giving Mr. Walls advice with respect to the installation of a skylight. (*See* Statement of Material Facts ¶¶ 23-27.) Mr. Hinkle was not working for Mr. Walls that day. (*Id*. ¶ 24.) Mr. Hinkle had no expectation of being paid, and was not paid, for helping out Mr. Walls. (*See id*. ¶ 26.) Under those undisputed factual circumstances, the Court need not even engage in an employee-versus-independent-contractor analysis, but can simply find that, based on the undisputed material facts, Mr. Hinkle was not an employee of Mr. and Mrs. Walls and grant summary judgment for him.

**B.    If the *Safeway* factors are implicated here, their application to the undisputed material facts compels the conclusion that Mr. Hinkle was not an employee of Mr. and Mrs. Walls, but merely an independent contractor.**

If the Court nevertheless determines to apply the *Safeway* factors to the relationship between Mr. and Mrs. Walls and Mr. Hinkle, the undisputed material facts establish that Mr. Hinkle was not an employee, but only an independent contractor.

**(1)    *Control***

Neither Mr. nor Mrs. Walls controlled Mr. Hinkle's work, the critical factor in determining whether an employee-employer relationship exists. "An employer-employee relationship can be shown when the employer has control over the day-to-day operations of the alleged employee and can direct the manner in which the work is performed." *Ames*, 2006 WL 2711546, at *5 (citations omitted). It was Mr. Hinkle, not Mr. Walls, who decided whether, and if so, when, he wanted to work, including the number of hours per day, and which hours. (Statement of Material Facts ¶¶ 5, 21.) As Mr. Hinkle explained it, Mr. Walls "would either ask me for advice, or he would ask me if I could something for him; and *I would let him know if I could or couldn't. Sometimes I could, and sometimes I couldn't, it would depend on my health issue*." (*Id*. ¶ 5 (Hinkle Dep. 20:14-19) (emphasis added).) Similarly, Mr. Walls testified that Mr. Hinkle controlled the employment relationship:

> [F]rom the beginning, we operated on the principle . . . that I didn't control him. . . . He worked when he worked. He couldn't work at all times, and I didn't have work for him at all times, so he wasn't an employee, and he would take care of his taxes, and I would take care of my taxes.

(*Id*. ¶ 22 (Walls Dep. 26:13-19).) Furthermore, Mr. Walls explained that, with respect to the actual work of both Mr. Hinkle and Mr. Edwards: "I had some knowledge of the

work, and, mainly, *I'd tell them what I wanted done, but as to the methodology in which they proceeded, it was pretty much up to them*."  (*Id*. ¶ 20 (Walls Dep. 72:6-9) (emphasis added).)

Nothing in the record suggests that Mr. Walls exercised any meaningful control over Mr. Hinkle.  Mr. Hinkle decided whether to work or not, and if so, when.  He had the freedom to set his own schedule.  And he performed the work he did because of his expertise in construction-related trades, an area in which Mr. Walls, a former attorney, was not skilled and not engaged in business.  Those facts are all indicative of a lack of control by Mr. Walls.  *See Ames*, 2006 WL 2711546, at *5 (no control by taxi company where "[e]ach cab driver controlled his own work day by setting his own schedule"); *Larson v. Johnson*, 184 F. Supp. 2d 26, 38 (D. Me. 2002) ("[T]here is little doubt that Plaintiff was an independent contractor.  He set his own schedule at the job site and apparently also selected the aspects of the project in which he became involved.  He performed the work for Defendants, none of which is in the business of residential construction, because of his particular expertise in construction management.").

Additionally, the agreement between Mr. Walls and Mr. Hinkle evinces a lack of control by Mr. Walls.  According to both Mr. Wall and Mr. Hinkle, it was understood between them that Mr. Hinkle was not an employee of Mr. Walls, but an independent contractor.  Although there is some discrepancy in the record as to whether there was an oral or written agreement that Mr. Hinkle was an independent contractor and not an employee of Mr. Walls, (*see* Statement of Material Facts ¶ 22 & n.3), the record is undisputed that this was the agreement of the parties and reflected both their intentions.  The unambiguous agreement militates heavily in favor of finding that Mr. Hinkle was an

independent contractor, not an employee of Mr. and Mrs. Walls.  *Contra Beegle*, 679

A.2d at 485-86 (ambiguous contract language concerning agent/independent-contractor

relationship precluded summary judgment).

**(2)      *Selection and engagement of Mr. Hinkle***

Mr. Walls did not hire Mr. Hinkle in the manner that an employer hires an

employee.  They were neighbors who met when Mr. Walls moved to Mr. Hinkle's

neighborhood.  (Statement of Material Facts ¶ 2.)  There was no recruitment, no

application, no interview, and no background check.  *See Schecter v. Merchants Home,*

*Delivery, Inc.*, 892 A.2d 415, 423 (D.C. 2006) (citing recruitment, interview, and

background check as indicia of hiring an employee).  Because Mr. Hinkle had certain

skills that Mr. Walls lacked, Mr. Walls turned to him for advice and assistance in

connection with the maintenance and repair of the Walls' rental properties.  (Statement of

Material Facts ¶¶ 3-4.)

Furthermore, Mr. Walls did not engage Mr. Hinkle in a manner consistent with an

employee-employer relationship.  Mr. Walls:  generally paid cash to Mr. Hinkle; had no

written contracts for work with Mr. Hinkle; kept no records of Mr. Hinkle's work; never

provided any training to Mr. Hinkle; issued no W-2 forms; never deducted anything from

Mr. Hinkle's pay; never withheld taxes from Mr. Hinkle's pay; never paid Social

Security taxes for Mr. Hinkle; never provided Mr. Hinkle with any benefits; and never

carried any worker's compensation insurance.  (Statement of Material Facts ¶¶ 8-15, 17

18); *see, e.g., Gardner v. Kothe*, 109 N.W.2d 405, 408 (Neb. 1961) ("The fact that Noble

did not deduct withholding taxes or social security from the amounts paid to plaintiff is

evidence that tends to negative a finding that the plaintiff was an employee but it is not conclusive.")

Finally, Mr. Hinkle did not work for Mr. Walls on a continuous basis. In fact, Mr. Hinkle worked for Mr. Walls only sporadically, owing to Mr. Hinkle's health issues. (Statement of Material Facts ¶ 5.) At most, Mr. Hinkle worked for a month at a time. (*Id.*) These facts also militate against finding an employee relationship. *See*, *e.g.*, *Safeway*, 448 A.2d at 861 (finding employee relationship where security guards were hired "to work on a continuous basis").

**(3)    *Payment of wages***

When he chose to work for Mr. Walls, Mr. Hinkle was typically paid by the day irrespective of the number of hours he actually worked. (Statement of Material Facts ¶ 9.) Payment in this manner may be somewhat less suggestive of an employee-employer relationship than payment based on an hourly wage for hours actually worked, but "under all of the circumstances, the payment arrangement sheds little, if any, light on whether an employer-employee relationship existed" between Mr. Walls and Mr. Hinkle. *Schecter*, 892 A.2d at 424.

**(4)    *Power to discharge***

Although "[t]he power to discharge suggests an employer-employee relationship," where the termination does not prevent a worker from continuing in his line of work, there is no suggestion of an employee-employer relationship. *Ames*, 2006 WL 2711546, at *7 (citations omitted). In *Ames*, there was no suggestion of an employee-employer relationship where a taxicab driver's relationship with Yellow Cab could be "terminated

8

by either party at any time," because that "would have the effect only of preventing the driver from using the Yellow Cab colors and emblem." *Id*. The termination could not "prevent a driver from operating his cab and working as a cab driver." *Id*. Likewise, although Mr. Walls could terminate Mr. Hinkle at any time, (Statement of Material Facts ¶ 16), Mr. Hinkle remained free to perform handyman type services for others, and in fact did so while he also was performing work for Mr. Walls. (*Id*. ¶ 7.) This factor therefore militates in favor of finding an independent-contractor relationship, and not an employee relationship.

**(5)    *Whether the work is part of the regular business of the employer.***

The work that Mr. Hinkle performed was not part of the regular business of Mr. and Mrs. Walls. Indeed, maintenance and repair of the rental properties that Mrs. Walls owned was not her or husband's regular business. Mrs. Walls was a writer and editor. (Statement of Material Facts ¶ 2.) Mr. Walls did not work regularly since 1995. (*Id*.) On the day in question, Mr. Hinkle's role was limited to assisting with installation of a skylight. That – or even maintenance and repair of the rental properties more broadly – is not the regular business of the Walls. This factor therefore also militates in favor of finding an independent-contractor relationship, and not an employee relationship.

## CONCLUSION

On the day that Donald K. Hinkle was seriously injured when he fell from a ladder at rental property owned by Mrs. Walls, he was not an employee of Mr. and Mrs. Walls. The undisputed material facts establish that Mr. Hinkle went to the property, not to work, but rather, consistent with the expectation that he would not be paid, just to give

9

some advice to his neighbor about the proper installation of a skylight.  At most, under

the *Safeway* factors, Mr. Hinkle was an independent contractor, as evidenced by the

singular lack of control that Mr. Walls exercised over Mr. Hinkle in terms of whether,

when, and how Mr. Hinkle performed work for him.  Accordingly, the Court should find

that Mr. Hinkle was not an employee of Mr. and Mrs. Walls and that the policy exclusion

at the heart of this declaratory-judgment action does not apply.

Respectfully submitted,

KOONZ, MCKENNEY, JOHNSON,
 DEPAOLIS & LIGHTFOOT, L.L.P.

By:   /s/ Roger C. Johnson
  Roger C. Johnson (D.C. Bar #940577)
  Andrew W. Cohen (D.C. Bar #441149)
  2001 Pennsylvania Avenue, N.W.
  Suite 450
  Washington, DC  20006
  Tel:  (202) 659-5500
  Attorneys for Defendant Donald K. Hinkle

Date:  March 7, 2007